16888

FURMAN UNIVERSITY *ET AL. v.* WILSON GLOVER *ET AL.*
(83 S. E. (2d) 559)

*Messrs. William I. Bouton* and *William J. Bryson,* of Greenville, *for Appellants,*

*Messrs. Haynsworth & Haynsworth,* of Greenville, *for Respondents,*

July 6, 1954.

Sept. 15, 1954.

HENDERSON, Acting Associate Justice.

There is involved in this case the title to certain lands in the city of Greenville, comprising what is known as the men's campus of Furman University, and what was formerly known as the Greenville Woman's College, but since the consolidation of the two institutions referred to as the women's campus of the University.

The lands were conveyed by Vardry McBee more than a hundred years ago. He died in 1864, and the defendants are those who now answer to the description of his heirs-at-law. The action was brought by the respondents for the purpose of having the court construe the deeds. They ask for a declaratory judgment that Furman University is vested with a fee simple title, with full power to sell, lease, or otherwise dispose of the lands. The cause was referred to the master of Greenville County. In his report he holds that the university has a fee simple title, and that there is nothing in any of the deeds affecting the property which would give rise to any enforceable right or interest in the heirs of Vardry McBee. The report was confirmed by Honorable J. Robert Martin, Jr., the resident judge, and adopted by him as his decree.

The men's campus and the women's campus of the university are over a mile apart, and are separated by the central commercial and business district of Greenville. During the years the student body has greatly increased in size. The buildings of the university have become inadequate for its use. The separation of the two campuses has resulted in an

expense of about $30,000.00 a year for the transportation of students from one school to the other for necessary classroom or laboratory attendance in certain subjects. The trustees have found that additional land is urgently needed. They can acquire twenty-five acres adjoining the men's campus, at a cost of about $750,000.00. However, in view of the very high price of such adjacent land, and the need for even more space for future expansion, consideration was given to the purchase of an entirely new site, upon which all the facilities of the university could be consolidated. Accordingly, a site containing about one thousand acres, located five miles north-west of the center of the city, was bought at a cost of $440,000.00.

The university plans to landscape and beautify so much of this property as is presently needed, to erect new buildings at a cost of about $8,000,000.00, and to conduct all of its activities there. The trustees wish either to develop the present campus sites in the city so that they will produce income from rentals, or to sell a part, or possibly all of the property, as may be determined hereafter from time to time, and to use the revenue from the property and the proceeds of any sales, for the educational purposes of the university.

Let us take up, first, the deeds covering the men's campus.

On June 18, 1851, Vardry McBee conveyed twenty-five acres to the State Convention of the Baptist Denomination in South Carolina, a corporation. The deed provided that it was "in trust for and to the use of The Furman University for educational purposes connected with the said The Furman University, and for no other purpose whatsoever. That is to say, that the State Convention of the Baptist Denomination in South Carolina shall henceforth and forever permit and suffer the said The Furman University to hold, possess and enjoy the said tract or parcel of land as a site and location for all colleges, academies, schoolhouses, professors' houses or other buildings or matters of any kind whatsoever necessary for or connected with the educational purposes of the said The Furman University."

A few months later, on Jan. 6, 1852, Mr. McBee conveyed an adjoining tract of twenty-five and one-tenth acres to the State Convention, to the use of Furman University, the language being identical with that employed in the earlier deed.

The question is whether the conveyances vested in Furman University a fee simple title, without restrictions. The respondents so claim. The appellants, on the other hand, take the position that the deeds gave a fee determinable, and that a sale or lease of the property would give the heirs-at-law of Vardry McBee a right of reverter or of re-entry.

The conveyances contained no express words of a right of reverter, nor any statement from which such right could be implied. It is not provided that the lands were to be held while, or so long as, used for a specified purpose, or that the grantor or his heirs might re-enter on certain conditions. The conveyances were not gifts of Mr. McBee. The land was sold at $150.00 an acre, and the record shows that such was a full price for the property at that time, when Greenville was a small village.

The respondents strongly urge that the obvious purpose of the provisions in the deeds was to insure that the lands were made available for the use of Furman University, rather than for the separate and independent use and enjoyment of the State Convention, and that the language was a declaration of the purpose for which the land was conveyed. They say that if the provisions had been inserted for the purpose of restricting or limiting the use of the land, such intention would have been expressed by appropriate language, including a provision for a reverter in the event the site was ever used for any other purpose. They make the cogent point that the grantees would not have paid a full consideration for an estate in fee simple and at the same time accept a base or qualified estate, with conditions subsequent or other limitations in favor of the grantor or his heirs.

In seeking to ascertain the intention of the grantor we find that the construction of these instruments is not an open question, since the identical point involved here has been clearly and definitely settled in the case of *McManaway v. Clapp*, 150 S. C. 249, 148 S. E. 18, decided in 1929.

In that case McManaway had bought from Furman University a lot which was a portion of the lands embraced in the 1851 deed of Vardry McBee, above. McManaway contracted to sell the lot to Clapp, who declined to accept the deed upon the ground that the plaintiff's title was defective in consequence of the language in the deed of Mr. McBee to the State Convention for the use of the university. A reference was held by the master of the county, and a full report was made. It was confirmed by Honorable M. L. Bonham, at that time a circuit judge, and later the Chief Justice of this Court. The decree of Judge Bonham was unanimously affirmed, the master's report and the circuit decree being set out in full. It was held that the language in the McBee deed was merely declaratory of the purpose, that the conveyance did not contain any condition subsequent, or reserve any right or interest whatsoever in Vardry McBee or his heirs, that the grantor intended to divest himself fully of the title, that the Baptist Convention held a dry or naked trust, and that the statute of uses operated to convey the fee to Furman University.

As that decision so fully covers the present case, we conclude that the university has a fee simple title in the men's campus.

Turning now to the women's campus, it appears that on Aug. 12, 1820, Vardry McBee conveyed a tract of thirty acres. The deed contained as a recital the following: "For the consideration of having a male and female academy established near Greenville Court House in the State of South Carolina and in consideration of $1.00 to me in hand paid by the Trustees of the academy for and on account of the same." The *habendum* clause is "to have and to hold in trust

for the use of the said academy all and singular, the premises before mentioned unto the said Jeremiah Cleveland, William Toney, William Young, John Blassingame, Spartan Goodlett and B. J. Earle, their successors in office (or a majority of them) or their assigns forever."

The academy was not incorporated at the time, but about four months later it was incorporated in the name of the trustees of the Greenville Academy.

The language used in this deed is even more free of restrictions than that employed in the conveyance of the men's campus, construed in the *McManaway case,* above. Applying the ruling in that decision, the conclusion is inevitable that the words in the present deed are intended to insure that the lands be held, not for the beneficial use of the trustees, but rather for the use of the proposed academy. There is nothing in the deed which contains any limitation or restriction upon the fee. The statement of the consideration is obviously expressive only of the purpose of the conveyance. The deed created a passive or dry trust. It imposed no duties upon the trustees which were not already upon them in their capacity as trustees of the academy. Their only duty under the deed was to hold the legal title. The entire estate of Mr. McBee was conveyed, and there was left no possibility of reverter in him or his heirs.

This conclusion is strengthened by the case of *Ex parte Trustees of Greenville Academies,* 7 Rich. Eq. 471, 28 S. C. 171, in which it was held that the academy, as a corporation, acting through its board of trustees, had full power to convey its lands to Furman University.

None of the subsequent deeds created any right or interest in Vardry McBee or his heirs, and so it clearly appears that the defendants in this action have no title or interest, right of reverter or of re-entry in the women's campus property.

In July, 1854, a majority of the trustees of the academy applied to the court of equity for permission to convey to

Furman University not only the lands it owned, but also to surrender to the university all of its corporate franchise and privileges. The appellate court, then known as the Court of Appeals, held that the land could be conveyed by the corporation, but that it could not transfer its corporate franchise without legislative sanction. *Ex parte Trustees,* above. On December 21, 1854, the Legislature of the state passed a special act authorizing the academy to convey its lands and to surrender its franchise and charter to the university. XII Stat. 322.

Pursuant to the decision of the Court, and the authorizing act of the Legislature, on Dec. 25, 1854, the academy conveyed to the university all of its lands, then consisting of twenty-two and a half acres, together with its charter of incorporation and all of its trust rights and privileges, and the academy ceased to exist as a legal entity.

The deed recites that it is made "for and in consideration of the premises above mentioned and for the purpose of having a more prosperous and flourishing male and female school than we otherwise could establish and maintain and for and in consideration of the sum of $10.00 to us in hand paid;" and it is provided in the *habendum* clause, as follows: "To have and to hold all and singular the said premises, trusts, rights and privileges unto the said Trustees of the said Furman University and their successors in office forever on and upon the following conditions and trust, now and forever irrevocable and to be carried out in perpetuity truly and strictly. That is to say the Trustees of the said Furman University shall at all times to come keep up and maintain a male and female school in the village of Greenville where all the branches of education usually pursued in a male and female academy shall be taught and which said school shall be open to all the community as the Greenville academies have heretofore been and the said Trustees of the said Furman University shall strictly carry out all the trusts in the deed of the said Vardry McBee to the Trustees of the Greenville academies and likewise all the trusts contained

and duties imposed by the charter of incorporation of the Greenville academies."

The Master held, which the Court below confirmed, that the effect of the foregoing conveyance was to vest in Furman University fee-simple title to the premises, free of any trust, restriction or limitation, and that Furman University could convey good fee-simple title thereto. We agree with the decision of the Court below to the extent that it holds that the deed of December 25, 1854, contains no restriction, condition or other interest enforcible by the heirs of Vardry McBee. But in so far as the Court undertook to construe this deed as containing no trust, covenant or condition enforcible by others than the parties to this action, we think it went beyond the issues framed by the pleadings. The only issue before the Court was whether any deed in the chain of title gave rise to any enforcible right, estate or interest in Vardry McBee or his heirs at law. We agree with the adjudication made with respect to their rights, but since they are the only parties to the action, we think we should go no further. Accordingly, the construction of that deed, except to the extent of our holding that it gives no rise to any right or interest in the heirs of Vardry McBee, is left open without prejudice to the right of Furman University or any other interested party to bring an appropriate action to have same construed.

We, therefore, conclude that the heirs of Vardry McBee have no right or interest in the men's campus; that Furman University is the owner of the entire fee-simple title to this campus, subject to no enforcible condition or restriction, and with the power to grant to any purchaser of all or any part of such lands, a good and marketable title in fee simple. As held in the Master's report and the decree, any income derived from the men's campus property by rentals or other revenue, and the proceeds of any part of it which may be sold, shall be used for the educational purposes of Furman University. However, there is no duty upon a purchaser to see that the proceeds are so applied.

In so far as the women's campus is concerned, we hold that the heirs of Vardry McBee have no interest whatsoever in same, but go no further and leave undecided the construction of the deed made on December 25, 1854, except to the extent above indicated.

The judgment is accordingly modified in accordance with the views herein expressed and, as so modified, is affirmed.

STUKES, TAYLOR, OXNER and LEGGE, JJ., concur.