## 17800

FURMAN UNIVERSITY, Respondent, v. Daniel R. McLEOD,
Attorney General of The State of South Carolina, Appellant

(120 S. E. (2d) 865)

476

*Messrs. Daniel R. McLeod, Attorney General, Benjamin B. Dunlap and J. McNary Spigner, Assistant Attorneys General,* of Columbia, *for Appellant,*

*Messrs. Haynsworth, Perry, Bryant, Marion & Johnstone,* of Greenville, *for Respondent,*

July 5, 1961.

PER CURIAM.

This appeal involves a determination of the proper construction and effect to be given to certain deeds in the chain of title of Furman University to its property in the City of Greenville, known as the Women's Campus.

The decree of the able and distinguished Judge of the Greenville County Court, the late Honorable W. B. McGowan, fully sets forth the facts and correctly disposes of all issues in the case. After eliminating the first paragraph and subsection 5 of the last paragraph, the remainder of the decree of the County Court is adopted, and will be reported, as the opinion of this Court.

Affirmed.

### Decree of the Court

The purpose of the proceeding is to have the Court construe and determine the effect of certain deeds in the chain of title of Furman University to what is known as the Women's Campus on College St., in the City of Greenville, and particularly the deed of December 25, 1854, by which The Trustees of the Greenville Academies conveyed this land to Furman University.

Furman University, a South Carolina corporation organized for educational purposes in 1850, for more than 100 years has maintained and operated in Greenville an institution of higher learning.

It acquired from Vardry McBee during 1851-1852, the property which became known as the Men's Campus of Furman University, located close to the center of what was then the Village of Greenville.

The property which became known as the Women's Campus also came through a deed from Vardry McBee, having been conveyed by him to The Greenville Academies in 1820; by Greenville Academies to Furman University in 1854 and by Furman University to the State Convention of the Baptist Denomination in 1910. The Women's Campus, so called, was also located near the center of the then Village of Greenville but on the opposite side of the commercial section from the Men's Campus, the two campuses being about a mile apart.

In 1937 a consolidation was effected between Furman University and Greenville Woman's College, in the interest of economy and efficiency of administration. Pursuant thereto, the State Convention of the Baptist Denomination conveyed to Furman University the property which had been conveyed to it in 1910 by Furman University. Two lots adjacent thereto, aggregating about 2.23 acres, which had been acquired by Greenville Woman's College, from Bettie H. Orr, also were conveyed to Furman University. Thereafter, Furman University also acquired two other contiguous parcels on College Street from H. K. Townes, as Executor, and The Peoples National Bank of Greenville, as Executor.

In the years following the consolidation of the two schools, there was a very large increase in the number of students in attendance, to such an extent that the facilities of Furman University were taxed to capacity. The classrooms were overcrowded, the accommodations for the students were inadequate, and the buildings and facilities for the many other needs and purposes of the University were antiquated and insufficient to provide for its growing needs.

The operation of the two separate campuses proved to be extremely expensive and unsatisfactory as it required the

transportation of students through the main part of the City from one campus to the other for various classes, with resultant loss of time, inconvenience and the risk of traffic accidents.

The Board of Trustees of Furman University in 1945 became convinced that the consolidation of the two compuses was the only practical solution and that to meet the need for expansion and provide for the future needs and development of Furman, in keeping with the growth of Greenville, the acquisition of additional lands was an urgent necessity.

The cost of acquiring additional lands adjacent to either campus was prohibitive because of the change and development which had taken place in the immediate vicinity of each. The property adjoining the Men's Campus had become a thickly populated section and only a few blocks away a commercial district had developed.

The Women's Campus, only two blocks from Main Street, was virtually in the center of a rapidly growing commercial section of the City.

In view of the then existing situation, the President of the Board of Trustees of Furman University, in 1947, appointed a Committee to make an investigation and study of Furman University, the problems confronting it and its present and future needs.

As a result and based upon the Committee's report, it was determined by the Board that the most economical and practical solution, one which would take care of expansion needs for the future and prevent the development of an undesirable neighborhood in the vicinity of its campus or the encroachment of commercial establishments, would be the acquisition of an entirely new site.

After careful consideration and study and a thorough investigation by leading architectural and professional firms and the Greenville Real Estate Board, a site was selected and purchased about 1952. The property consists of approximate-

ly 1,000 acres located on Buncombe Road about five miles north of Greenville Court House outside the present corporate limits of the City of Greenville and on the fringe of the residential area.

The record shows that the Board of Trustees of Furman University intended that when the University had been relocated on the new site, the former campuses would be sold, leased or developed and the proceeds or income therefrom would be used to defray in part the cost of construction of the new facilities and its general educational purposes.

Some question having arisen concerning the power and authority to sell and convey fee simple title to the property known as the Men's Campus and that comprising its Women's Campus, plaintiff in December, 1952, instituted a proceeding in the Court of Common Pleas for Greenville County against Wilson Clover and others, being all those answering the description of the heirs at law of Vardry McBee, asking that the Court construe the deeds from Vardry McBee under which it acquired the lands known as the Men's Campus and also the deed from Vardry McBee by which he conveyed the Women's Campus and to declare the plaintiff vested with fee simple title to all of said lands with full right and authority to sell, lease and/or otherwise use the same.

The lower Court held that the deeds vested in Furman University fee simple title to all the property comprising the two campuses, free from any trust, restriction or limitation and that Furman University could convey good title thereto.

On appeal, the Supreme Court, in an opinion reported in *Furman University v. Glover, 226 S. C. 1, 83 S. E. (2d) 559, 563,* affirmed the holding of the Court of Common Pleas to the effect that the heirs of Vardry McBee had no right or interest whatsoever in any of the lands constituting the Men's Campus and that Furman University held fee simple title to the property "subject to no enforceable condition or restriction, and with the power to grant to any

purchaser of all or any part of such lands, a good and marketable title in fee simple."

With respect to the lands comprising the Women's Campus, the Court likewise held that the heirs of Vardry McBee had no "title or interest, right of reverter or re-entry" and further that the deed of December 25, 1854 from The Greenville Academies to Furman University "contain[ed] no restriction, condition or other interest enforceable by the heirs of Vardry McBee" but went on to say that "in so far as the [lower] Court undertook to construe this deed as containing no trust, covenant or condition enforceable by others than the parties to this action, we think it went beyond the issues framed by the pleadings. * * * Accordingly, the construction of that deed, except to the extent of our holding that it gives no rise to any right or interest in the heirs of Vardry McBee, is left open without prejudice to the right of Furman University or any other interested party to bring an appropriate action to have same construed." In consequence thereof, Furman University has instituted this proceeding for the purpose of having the Court construe and determine the effect of the deed of December 25, 1854, from the Trustees of Greenville Academies to Furman University and the other deeds in its chain of title to the Women's Campus, and also to determine the right and power of plaintiff to go forward with its plans for the relocation of the campus with power to sell, develop, lease, mortgage or otherwise dispose of the property.

Daniel R. McLeod, as Attorney General of South Carolina, upon whom is imposed the responsibility of protecting the interests of the public in matters relating to the administration and enforcement of charitable trusts, has been named Defendant and has filed his answer herein. I find and hold that Daniel R. McLeod, as Attorney General, is the only proper and necessary party defendant to this proceeding. The language of the deeds requiring the maintenance of a school in or near Greenville creates, at

most, a public trust. There are no private rights of reversion or reverter. Even if the language should be given that strict construction which the Attorney General advances it would create no private right of action in any individual citizen. The public interest is properly represented by the defendant.

Under Title 1, Section 240 of the 1952 Code of Laws of South Carolina, the Attorney General of South Carolina is charged with the duty to "Enforce the due application of funds given or appropriated to public charities within the State, [and] prevent breaches of trust in the administration thereof."

It is also the general law that in the matter of administering or enforcing charitable trusts, the Attorney General is the proper party to protect the interest of the members of the public at large, as distinct from those having "immediate or peculiar interests."

Charities, 10 Am. Jur. 668; Attorney General, 5 Am. Jur. 234; *State ex rel. Daniel v. Strong,* 185 S. C. 27, 192 S. E. 671; Annotation, Enforcing Charitable Trusts, 124 A. L. R. 1238.

For a clear understanding of the issue, consideration should be given to the language used in the deeds in the chain of title under which Furman University holds the property comprising the Women's Campus.

The first deed to be considered is that from Vardry McBee to Jeremiah Cleveland *et al.,* Trustee of the Greenville Academy, dated August 12, 1820, recorded in Vol. L. at page 288. The consideration for the deed is stated to be "for the consideration of having a male and female academy established near the Greenville Courthouse in the State of South Carolina and in consideration of $1.00 to me in hand paid by the Trustees of the said academy for and on account of the same."

The *habendum* is "to have and to hold in trust for the use of the academy, all and singular, the premises before

mentioned, unto the said Jeremiah Cleveland *et al.* (naming them) their successors in office (or a majority of them) or their assigns forever."

On December 20, 1820, by Special Act of the S. C. Legislature (VIII S. C. Stat. 312) the Trustees of the Greenville Academies were incorporated under the name of "The Trustees of the Greenville Academies."

Subsequently in July, 1854, the Trustees of the Greenville Academies, deeming it desirable to transfer all assets and likewise all privileges and franchises to the Baptist Convention of South Carolina or to the Trustees of Furman University, filed a petition to this effect in the Court of Equity. On appeal to the Court of Errors from the order of the Chancellor granting the petition, it was held in *Ex parte Trustees of Greenville Academies, 7* Rich. Eq. 471, that the Trustees had no right to transfer their charter and franchise without legislative sanction but that under the powers vested in them by the Charter and *under the deed of Vardry McBee of August 12, 1820, the Trustees had full and unrestricted authority to transfer the land and other assets to the Baptist Convention or to Furman University.*

To quote the language of the Court in *Ex parte Trustees of Greenville Academies, supra:*

"By the deed of Vardry McBee, the title to the land is vested in the Trustees and their successors, or a majority of them; and by the charter of incorporation, *the trustees have authority in the most ample terms, to lease, sell, alien and convey the real estate belonging to the Corporation. The purposes of the trust were to maintain and keep up a male and female academy in the vicinity of Greenville. In carrying out these objects the trustees were unrestricted."*

Since there had been some disapproval by the Court of Errors to the transfer by the Trustees of The Greenville Academies of their corporate franchise (although no objection to conveyance of their property), without Legislative

sanction, an Act of the Legislature was passed December 21, 1854 (XII Stat. 322) directing:

"That the Trustees of the Greenville Academies have leave, and they are hereby authorized to convey their land, and surrender their trust and charter to the Trustees of Furman University, and the Trustees of said University are hereby authorized and empowered to accept the same, on the condition that they carry out the original trust in regard to the said Greenville Academies, and keep up, in all time to come, a male and female school *at or near Greenville Court House,* where all the studies may be pursued which are usually taught in male and female academies."

Four days after the passage of this Act, by deed dated December 25, 1854, recorded in Deed Book X at page 711, R.M.C. Office for Greenville County, The Trustees of the Greenville Academies transferred to Furman University 22½ acres of land, representing the portion of the 30 acres conveyed to the Trustees of the Greenville Academies by Vardry McBee in 1820, which the Trustees still owned; the remainder having been conveyed previously by the Trustees to others.

The deed of December 25, 1854, after referring to the deed of 1820 from Vardry McBee, the incorporation of the Trustees of the Greenville Academies, the decision of the Court of Errors and the Act of December 21, 1854, states that the conveyance is:

"For and in consideration of the premises above mentioned and for the purpose of having a more prosperous and flourishing male and female school than we otherwise could establish and maintain and for and in consideration of the sum of $10.00 to us in hand paid and by the authority of the deed of Vardry McBee as well as our Charter of Incorporation and the Act of the Legislature just passed and also by authority of the decision of the Court of Errors declaring our right to sell and convey."

The language of the *habendum* in this deed is:

"To have and to hold all and singular the said premises, trusts, rights and privileges unto the said Trustees of the said Furman University and their successors in office forever on and upon the following conditions and trust, now and forever irrevocable and to be carried out in perpetuity truly and strictly. That is to say the Trustees of the said Furman University shall in all time to come keep up and maintain a male and female school *in the Village of Greenville* where all the branches of education usually pursued in a male and female academy shall be taught and which said school shall be open to all the community as the Greenville Academies have heretofore been and the said Trustees of the said Furman University shall strictly carry out all the trusts in the deed of said Vardry McBee to the Trustees of the Greenville Academies and likewise all the trusts contained and duties imposed by the charter of incorporation of the Greenville Academies."

In 1869, by virtue of certain financial difficulties in which plaintiff became involved as a result of the Confederate War, a suit and sale of the plaintiff's so-called "academy lands" was threatened. This, however, was settled by agreement of the parties involved and confirmed by a decree of the Chancery Court dated September 20, 1869 (Old Equity Roll, 463) whereby the lands in question were subdivided into 5 tracts. The one on which the college building was located, containing approximately 5 acres, was retained by plaintiff, the other 4 tracts being sold and the proceeds paid over to the plaintiff's creditors, one of whom was Vardry McBee.

On November 30, 1910, plaintiff conveyed the campus site of 5 1/16 acres to the State Convention of the Baptist denomination in S. C., the consideration being the agreement of The State Convention to keep and maintain *in the City of Greenville* a school "Where all branches of education usually pursued in a male and female academy shall be taught and which shall be open to all the females of the University,

of the White race, and as the Greenville Academies were, and in consideration of the sum of $5.00." The *habendum* in this reads: "Upon the trust and condition that it shall in all time to come keep up and maintain *in the City of Greenville,* South Carolina, a school" as above stated.

In 1912, Greenville Female College (later Greenville Woman's College) acquired 2 lots of land which had been a part of the original 30 acres conveyed by Vardry McBee to The Greenville Academies.

In 1937, after the consolidation of Furman University and Greenville Woman's College, The State Convention of the Baptist Denomination and Greenville Woman's College conveyed all lands constituting the Women's Campus to Furman University, in consideration of its agreement to make provision for the education of young women. The two contiguous parcels on College Street which Furman University subsequently acquired from H. K. Townes, as Executor, and the Bank, as Executor, also consituted a part of the original 30 acres conveyed by Vardry McBee to The Greenville Academies.

The resumè of the deeds in the chain of title of Furman University to the Women's Campus, beginning with the deed of August 12, 1820 from Vardry McBee, shows that the consideration for the conveyance and concern of the grantor in each instance was the establishment and maintenance of a male and female school in the vicinity of Greenville. In none of the deeds is there any stipulation or provision, express or implied, that the site of the school must be the specific land conveyed, nor is there any provision for reversion of title to any of the land. At the time the property in question was acquired by Plaintiff, Greenville was quite small, in fact only a village. It is understandable that the desire was to have the school located at a point easy of access to the community. There were in those days no automobiles, or other means of rapid transportation and it was not only desirable but necessary that the academy

should be within convenient walking distance of as many citizens of the community as possible and that it should be within a settled rather than isolated area.

It must be remembered that the deeds conveying the land to Furman University were executed more than 100 years ago. Tremendous changes have taken place since then. Conditions are vastly different from those prevailing at that time.

Greenville has grown from a small village with a population of about 1,300 to an area having a metropolitan population of over 200,000. The city limits have been extended several times. Automobiles and buses have taken the place of the horse and buggy. The time consumed in traversing a mile in those days would enable a person to travel many times that distance today. The present site of the Women's Campus is in a highly congested area. Formerly a residential district and in 1850 at the outer fringe of the village, it is today almost completely surrounded by business of all kinds.

For several reasons it has ceased to be a desirable location for a young women's college.

The new location is readily accessible to the entire community and surrounding areas; is in a beautiful setting, admirably adapted to the advancement of education and culture. There is ample space for all educational, cultural, recreational, and other needed facilities and for future expansion. Because, of its location and size with adequate parking space, the new site of the University is more convenient and more accessible to a larger number of people than the present Women's Campus which is small and cramped by comparison, and located in an area of business and traffic congestion.

Dr. John Plyler, President of Furman University since 1937 and a graduate of the class of 1913, gave a very impressive description of the new campus, the buildings, which include dormitories, a magnificent library, an auditorium with a seating capacity of 2,500, athletic fields, recreational facilities and other extensive improvements now under way,

thus affording many opportunities and advantages to both students and the community not possible in the former locations.

It was also clearly shown that because of the inability to transfer the operations of the Women's Campus to the new site, the women students are at a great disadvantage since they are being deprived of access to the improved living quarters and classrooms, educational, recreational and cultural facilities afforded the students at the new campus.

It appears also that the maintenance of a separate campus, several miles removed from the main campus, increases the financial burden of Furman University. The cost of administration is necessarily more than if all operations were conducted at one location. This is detrimental to the best interests of the University and decreases the amount which could and would be expended to promote its educational program.

If the property now constituting the Women's College should be sold, developed, leased or otherwise made income producing, the proceeds would be used by the University to further develop, improve and expand its operations. By unifying its campus and all activities, better educational advantages can be offered and no doubt at less cost than now possible at the separate campuses.

In the light of the development and expansion of Furman University which has taken place, made necessary by reason of changing conditions, it would be unreasonable to believe that Vardry McBee, who, according to testimony given in this case, was a prominent, public spirited and civic minded citizen, as were also the Trustees of The Greenville Academies, intended that the Academy which they were interested in establishing and having maintained, forever and anon would have to remain within the small confines of what was then the little village of Greenville. It would be unfair to consider them so shortsighted that they never envisioned further growth, development and expansion.

It is only logical to assume that if Vardry McBee and the Trustees of the Greenville Academies were living today they would enthusiastically endorse the relocation of Furman University and the transfer of the operations of the Women's Academy to the new consolidated campus with the many superior advantages it has to offer to the people of the community and the students who attend.

The primary, and in fact, the only concern of the grantors in the deeds in question, was to have an academy established and maintained somewhere in the vicinity of Greenville. There are no words expressive of any intent that the academy should be located and always maintained on the specific property conveyed.

This view finds support in the decision of the Court in *Ex Parte Trustees of Greenville Academies*, 7 Rich. Eq. 471 where it is said:

"By the deed of V. McBee, the title to the land is vested in the Trustees and their successors or a majority of them; and by the Charter of Incorporation the Trustees have authority in the most ample terms, to lease, sell, alien, and convey the real estate belonging to the corporation. The purposes of the trust were to maintain and keep up a male and female academy in the vicinity of Greenville. In carrying out these objects the Trustees were unrestricted."

Even were the Court to adopt the strict or technical construction for which the defendant contends, that the terms of the deed required that the Academy be built and maintained on the specific land conveyed or in the limits of the Village of Greenville as then constituted, the Court of Equity has the power upon a proper showing, to permit a deviation from the strict terms of a trust if necessary or advisable to carry out the purposes thereof.

The Plaintiff in the case under consideration, has produced ample proof of the need to deviate from the strict terms of the trust, if it be a deviation, in order to accomplish and fulfill the intent and purposes of the conveyance by

Vardry McBee to The Greenville Academies and from The Greenville Academies to Furman University.

The removal of the Women's Campus operations to the new site on the fringe of the residential section of Greenville, where all operations of the University may be combined, and the transfer of the properties of the Women's Campus to the endowment of the University, will enable the University to further promote the educational purposes for which it was established.

There is another factor to be taken into consideration in weighing the equities of the case. The deeds by which Furman University acquired title to the property constituting the Men's Campus were construed by the Court in *Furman University v. Glover et al., supra,* as vesting in Furman University fee simple title thereto, free of any restrictions, conditions or covenants. Plaintiff was therefore free to transfer all operations of the Men's Campus to the new site and to sell or develop the former Men's Campus.

It would be detrimental to the best interests of the community and would operate to defeat rather than to accomplish the true intent and purpose of the grantors of the Women's Campus, if Furman University should be required in perpetuity to retain the Women's Campus at its present location with consequent added administrative expense, where there is no practical possibility of expansion and in a neighborhood becoming each year increasingly undesirable for a young ladies' school.

The equities of the situation demand that this deviation from the technical terms of the trust, if it be a deviation, should be authorized by the Court.

3 Scott Trusts, Sec. 380; 10 Am. Jur. 620 (Charities), Sec. 51; Am. Law Institute—Restatement of the Law on Trusts, Sec. 381(d); 14 C. J. S., Charities, § 48, page 506; *Frierson v. Porter Academy,* 217 S. C. 168, 60 S. E. (2d) 82; *McManaway v. Clapp,* 150 S. C. 249, 148 S. E. 18;

*Re Sellers Chapel Methodist Episcopal Church,* 139 Pa. 61, 21 A. 145, 11 L. R. A. 282.

The defendant has raised the point that no deviation is possible since the cy pres doctrine is not recognized in South Carolina. It is the opinion of this Court, however, that the cy pres doctrine has no application in the instant case in any event as there is here no diversion of the trust and no transfer of assets to a different charity or to a different purpose.

*Mars v. Gilbert,* 93 S. C. 455, 77 S. E. 131; *City of Columbia v. Monteith,* 139 S. C. 262, 137 S. E. 727; see also 1 South Carolina Law Quarterly 331.

If anything, there is only a deviation from the strict or technical terms of the trust to enable the same charitable institution to better fulfill the purposes for which it was organized and to carry out to the fullest extent possible, the intent and purposes of the grantors of the property in question.

I conclude, therefore, and hold that:

■ (1) No term in any deed in the chain of title to plaintiff's Women's Campus, requires or binds plaintiff to maintain its campus on the specific land conveyed to it by The Greenville Academies;

(2) No restriction, condition, covenant or trust was imposed upon Furman University either by the terms of the deed of August 12, 1820 from Vardry McBee, or the deed from The Greenville Academies to Furman University or by any other deed in the chain of title to the Women's Campus, except the covenant to maintain an academy at a suitable location accessible to the citizens of Greenville;

(3) The relocation or removal of the Women's Campus to the new site outside but in close proximity to the residential sections of the community, complies with the true purpose of the grantors in the chain of title and does not violate any term or provision in any such deed and such relocation even if it be a deviation from the strict terms of any deed in the chain of title, is permissible and proper, in view of

changed conditions, and within the power of this Court to authorize ;

(4) The plaintiff holds fee simple title to the land described as the Women's Campus subject to no restrictions, reverter, reversion or right of re-entry or forfeiture, with full power to sell, lease, mortgage, convey, develop or otherwise dispose of all or any portion thereof; the proceeds therefrom to be used in furtherance of the educational purposes for which plaintiff was established including development of the new campus and the trust purposes annexed to the Women's Campus. Those dealing with Furman University in respect to said property shall not be required to see to the application of said proceeds.