### 18520

FIRST BAPTIST CHURCH OF WOODRUFF, S. C., Respondent, v. Mrs. N. N. TURNER, Mrs. W. D. Burnett, John D. Painter, H. K. Ezell, and W. W. Anderson, each individually and as representing the class of all heirs born and to be born, known and unknown, of the following named parties, to-wit: Joseph Woodruff, Deceased, and C. P. Woodruff, Deceased, both late of Spartanburg County, Woodruff, S. C., appearing as grantors in deeds into Plaintiff or its predecessors in title, Daniel R. McLeod, as Attorney General of the State of South Carolina, and all other persons known and unknown, born or to be born, having or claiming any right, title or interest in or to below described property in the name of First Baptist Church of Woodruff, S. C., Appellants.

(149 S. E. (2d) 45)

72

*Harry C. Walker, Esq.,* of Greenville, *for Appellants,*

*Messrs. Cox & Hanna,* of Woodruff, *for Respondent,*

June 15, 1966.

*Per Curiam:*

This appeal is from an order of the circuit court confirming, in its entirety, the report of the master, which will be reported herewith. The consolidated actions, referred to the master generally, involved the nature of the estate held by the respondent church in and to certain real estate in the City of Woodruff in Spartanburg County. These actions arose out of an unfortunate controversy between the members of the respondent church, as will more fully appear by reference to the master's report. Of the defendants named in the title of the case, only the defendants Turner, Burnett, Ezell and Anderson excepted to the master's report and appealed to this court. Of the appellants, only Anderson and Burnett are heirs of Joseph Woodruff and C. P. Woodruff, and they elected below to appear solely as individuals, and not as heirs, or representatives of the heirs, of either of the Woodruffs. As found below, all of the heirs of the said Woodruffs, as such, were in default, save unknown minors and other persons not *sui juris,* who were represented by a duly appointed guardian *ad litem,* there being no appeal by him.

Accordingly, there is no appellant before this court asserting any right or claim to any portion of the real estate as an heir of either of the Woodruffs. A number of appellants' exceptions challenge the adjudication of the lower court, adversely to the Woodruff heirs, of any possible right to, or claim upon any portion of the real estate by such heirs. These

appellants have no interest in or right to pursue such exceptions. They have disavowed any appearance as, or representation of, the heirs of the Woodruffs, and the claim or contention which they asserted was, in fact, adverse to any possible claim of reverter by such heirs. Accordingly, their exceptions in this respect present no issue for review by this court. See *May v. Jeter*, 245 S. C. 529, 141 S. E. (2d) 655, and authorities cited therein.

The only exceptions of the appellants which properly present any issue for review by this court are, we think, without merit. Appellants are representative of the dissident membership of the respondent who voted against moving the church to a new location. The interest or claim asserted by them in this litigation is simply that all of the real estate involved is held in trust by the respondent church by virtue of the language in the deeds from the two Woodruffs, and by virtue of the further fact that the proceeds of the sale of certain portions of the Woodruff tracts were allegedly used by respondent in construction of the North Main Street church erected on the Chamblin property, the deed to which contained no restrictive language. They contend that they are beneficiaries of such trust or trusts and, that such real estate must be perpetually kept and used as a place of worship. They sought to enjoin respondent from interfering with their continued use of the North Main Street church as a place of worship. The respondent, on the other hand, proposes to sell the real estate and use the proceeds from the sale thereof to reduce the indebtedness incurred by it in the acquisition and construction of the new church. The action brought by it sought a declaratory judgment as to its rights.

Insofar as the asserted rights and contentions of the appellants are concerned, the issue before us is simply whether the master correctly concluded that the appellants have no right to compel the perpetual maintenance of the North Main Street location as a place of worship, and no right to prevent the respondent from conveying a fee simple title to the real

property involved, for the purpose of using the proceeds in paying a part of the indebtedness incurred in the construction of the new church. Such conclusions were, we think, clearly correct under the factual circumstances and the authorities cited.

The judgment of the lower court is, accordingly,

Affirmed.

The Report of the Master, Honorable RALPH W. MITCHELL, requested to be reported, follows:

This is an action originally instituted by, N. N. Turner, Mrs. N. N. Turner, Mrs. W. D. Burnett, John D. Painter, H. K. Ezell, W. W. Anderson, and all others similarly situated and who may desire to join in this action and help bear the expense of same, Plaintiffs v. First Baptist Church of Woodruff, S. C., a corporation, and First Federal Savings and Loan Association, Spartanburg, S. C., a Corporation, Defendants," and in which action Plaintiffs raised the question of the Defendant, First Baptist Church's title in and to certain real estate located on Main Street, Woodruff, S. C. Both Defendants duly answered and the Defendant, First Baptist Church, duly filed its Return to the Rule to Show Cause why the Defendant, First Baptist Church of Woodruff, S. C. and its officers and agents should not be enjoined and restrained from interfering with the Plaintiffs and others similarly situated from worshiping in the old Church building located on its Main Street property. At the hearing of the Rule in Gaffney, S. C., Judge Frank Eppes ordered the Plaintiffs, N. N. Turner, etc., *et al.,* to vacate said church building and referred the matter to the Master. Later and before the reference, the Attorneys for the parties agreed that the Complaint should be amended to make certain Woodruff heirs parties, along with the Attorney General of S. C. and certain unknown persons, parties to prevent multiplicity of suits. By Summons, Complaint, Notice to Appoint Guardian *ad Litem* for certain Defendants and by Notice to Consolidate, dated June 15, 1964, the suit cap-

tioned herein was instituted by the Plaintiff, First Baptist Church. A hearing was held by Judge Bruce Littlejohn, who handed down his Order dated September 24, 1964, in which he ordered that the original suit be consolidated with captioned suit; that Mr. Pete Martin, a practicing Attorney in good standing of the Spartanburg County Bar be appointed Guardian *ad Litem* for all those Defendants under disability both minors and those who were not *sui juris,* to defend the action on their behalf; that the Attorney General had filed Answer representing the general public; that Mr. Harry C. Walker, Attorney of the Greenville County Bar was representing the Defendants, Mrs. N. N. Turner, Mrs. W. D. Burnett, H. K. Ezell and W. W. Anderson in their individual capacity only and that all other parties to said suit were in default; and the matter was referred to the Master of Spartanburg County to take the testimony and file same with his recommendations of fact and law. Pursuant to said Order of Reference signed by Judge Bruce Littlejohn dated September 24, 1964, a reference was held before me on September 30, 1964, and on November 16, 1964.

I find that the parties, Mrs. N. N. Turner, Mrs. W. D. Burnett, H. K. Ezell and W. W. Anderson were each served as will appear by Affidavits of John J. Collins; John J. Painter was served by the Sheriff of Cherokee County and that the Defendant, Attorney General of S. C. accepted service.

From the testimony and evidence presented, I find that W. W. Anderson and Mrs. W. D. Burnett are each an heir of both Joseph Woodruff, deceased and C. P. Woodruff, deceased, and since both were made parties individually and as representing the class of such heirs and both were properly served, all of the heirs of Joseph Woodruff, deceased, and C. P. Woodruff, deceased, were properly before the Court and all of said class of heirs are in default except those under disability and who are represented by Mr. Pete Martin as Guardian *ad Litem. (Faber v. Faber,* 76 S. C. 156, 56 S. E. 677.) The unknown Defendants were properly

served by publication as can be seen by the Order of Publication and Affidavit of Publication which were entered into the record. Therefore, I find that all necessary parties are properly served, are properly before the Court and that the subject matter of this action is real estate which is located within the County of Spartanburg, S. C.

The Notice of the Pendency of the Action was duly filed with the Clerk and it was also published as required by law.

At the said reference Mr. Harry C. Walker filed Answer for and represented Mrs. N. N. Turner, et al., as individuals; Mr. Pete Martin was present and represented all of the unknown parties under disability and Daniel R. McLeod, Attorney General of S. C., filed answer for the general public and all other party Defendants were in default as can be seen by the Affidavit of the Attorney for Plaintiffs.

It appears from the testimony taken before me that the First Baptist Church of Woodruff, S. C., is a Corporation being successor to the unincorporated association. First Baptist Church of Woodruff, S. C., who was successor of the old Bethel Baptist Church at Woodruff, and as such successor is now the owner of any property, real or personal, still owned by either of the unincorporated Associations, First Baptist Church or Bethel Baptist Church. It further appears that recently the corporate church purchased a 15 acre tract of land in the Woodruff town limits lying at the intersection of the Snows Mill Road with the Woodruff-Cross Anchor Road where it has erected the first phase of its planned new church plant at a cost of well over $375,000.-00. It further appears that the Plaintiff has given its note in the original amount of $250,000.00 to the First Federal Savings and Loan Association of Spartanburg, S. C., secured in part by the property that is the subject of this controversy. The testimony shows that this act of moving from the old site on N. Main Street to the new location was done only after studies of the needs of said Church were made by competent architects and the Sunday School Board of Nashville. I find that the congregation of this Church thoroughly

discussed this move to a new site and that it was done in accordance with all applicable law, customs and rules of said congregation and church and upon the vote and approval of the vast majority of said congregation, the vote being 206 for moving to 66 against moving.

It appears from the testimony taken before me that the principal issue involved is the question of title to the real estate described in the Complaint. The Plaintiff contends that it has a good fee simple, marketable title in and to said property while the individual Defendants contend that the wording in the various deeds into the Church makes the holding of the real estate a charitable trust. In order to make a proper determination of this issue, it will be necessary to look at each of the three deeds conveying property to the Church and portions of which property make up the property described in the Complaint. I find that the old church building situated on North Main Street is located upon part of a tract of 3¼ acres, more or less, conveyed to Bethel Baptist Church by deed of A. D. Chamblin and M. Lou Chamblin, with consideration being exchange of land and $5.00, dated December 13, 1907, and recorded in Deed Book 5-E, Page 502, R. M. C. Office for Spartanburg County, S. C. This deed recites that it is "given as a duplicate for deed formerly made to Bethel Baptist Church by said Anderson D. Chamblin on or about June 13th, 1874, which deed has been lost and this one is given in lieu of same." There are no reservations, conditions or restrictions whatsoever contained in this deed and I find it regular in every way conveying a fee simple title to property described therein.

It appears from the testimony and evidence presented that a portion of the property described in the Complaint was conveyed to Bethel Baptist Church as a 3½ acre tract, with consideration of $20.00 by deed of C. P. Woodruff, dated July 6, 1846, and recorded in Deed Book Z, Page 293, said R. M. C. Office and upon which is located the old parsonage, or a portion of it, on North Main Street. Part of the wording in this deed is "Unto the said Bethel Church solely for

.the use and privileges of said Church." It is noted that most of this original tract has long since been conveyed away by the Church with only a small amount remaining as is shown by a plat prepared by H. S. Brockman, Reg. Surveyor, dated September 29, 1964. There was testimony to the fact that a large portion of above mentioned tract was conveyed away prior to 1900 and has since been used as residential and business property. The parsonage lot was included in a real estate mortgage dated June 28, 1926, in original amount of $12,000.00. Testimony revealed that on or about June 20, 1952, the parsonage was leased for 1 year at $50.00 per month as a residence for a contractor.

I further find that a part of the property described in the Complaint came out of the original conveyance to Baptist Bethel Church of 12½ acres by deed of Joseph Woodruff, dated July 9, 1804, recorded in Deed Book K, Page 50, said R. M. C. Office. This deed contained the following words, "* * * Unto the said Baptist Bethel Church and their successors as long as the said Baptist Bethel Church shall continue the worship of God at that place * * *". Testimony and evidence revealed that prior to the year 1900 part of this tract of land was being used for school purposes. In the year 1907 the church conveyed a strip through the middle of this tract to U. S. Gray Cotton Mills to be used for railroad and mill purposes. In 1911 Bethel Baptist Church ceased to worship God on this tract in that they moved to the then new church building located on the Chamblin tract on North Main Street. Testimony revealed that the old church building located on this original 12½ acre tract was torn down in the early 1930's and no church building has been replaced.

Numerous lots were conveyed to various individuals throughout the years and some of the property used as a grain mill. There was testimony from certain officers and members of the church for many years that they had never heard anyone question the title to any of the church property and that the Church had·always treated and handled its

property as if it owned it without any restrictions or reservations.

I find from the testimony that the property mentioned above as the parsonage lot has been held by the church by adverse possession since prior to the year 1900, when there was ouster, by selling of the major portion thereof, and the church has been holding said parsonage lot adversely, continuously ever since, treating it in every way as its own property. In 1 Ruling Case Law at page 702, "A dissension, or ouster, in fact is defined to be the wrongful putting out of him that is actually seized of the freehold. * * * the actual possession of one is, in fact, the ouster of the the other * * * one of the most effective means of proving dissension is by showing the exercise of acts of dominion over the land by the adverse claimant." In 1 Ruling Case Law at page 697, "In determining whether particular acts of ownership indicate an adverse possession, the usual and ordinary use of similar lands by their owners should be taken into consideration. Any act or series of acts, which shows the open, notorious, exclusive and hostile possession of one who claims to be the owner of the land may be proven as evidence of adverse possession. Thus such possessions may be evidenced by receiving the rents, issues or profits of the property; or by conveying, * * * leasing, encumbering, improving * * *". In *Carr v. Mouzon,* 86 S. C. 461, 68 S. E. 661, our S. C. Supreme Court stated, "The giving of a deed or mortgage by one in possession of land is ordinarily evidence of assertion of title", and it is stated in *First Presbyterian Church of Beaufort v. Elliott,* 65 S. C. 251, 43 S. E. 674, by the S. C. Supreme Court that evidence of the execution of a mortgage over the lot in dispute is admissible to throw light on the "nature of the possession of the mortgagor." I find that the church has held this particular parsonage lot for over 60 years adverse to all the world, treating it as its own, selling off a large portion of it, giving a real estate mortgage over it in the year 1926, and leasing said property as rental property. I also find that the language in the deed to the church from C. P. Woodruff does not

create a trust or place any restrictions on the control of the property or its disposition. As stated in *McManaway v. Clapp,* 150 S. C. 249, 148 S. E. 18, "That property owned by schools and colleges cannot be used for any other than educational purposes does not involve any restrictions on their control or their power of disposition."

Even if we were to adopt the strict or technical construction for which the individual Defendants contend, that the terms of the deed required the property to be used solely for church purposes, a court of equity has the power upon a proper showing, to permit a deviation from the strict terms of a trust if necessary or advisable to carry out the purposes thereof. The Plaintiff in the case under consideration, has produced ample proof of the need to deviate from the strict terms of the trust, if it be a deviation, in order to accomplish and fulfill the intent and purpose of the conveyance by C. P. Woodruff that the property be used solely for church purposes. Testimony revealed that if the property is sold the proceeds are to be put into the new church building on the Cross Anchor Road, thereby carrying out his wishes.

As to that portion of property gotten under deed from Joseph Woodruff, I find that the language in that deed conveyed a fee simple determinable estate. In *Purvis v. McElveen,* 234 S. C. 94, 106 S. E. (2d) 913, the S. C. Supreme Court stated, "A fee simple determinable is an estate in fee 'with a qualification annexed to it by which it is provided that it must determine whenever that qualification is at an end.' 19 Am. Jur., Estates, Par. 28, p. 486. Such an estate would be created, for example, by a conveyance 'to A and his heirs so long as the land is used for a public school.' Simes and Smith, The Law of Future Interests (2d) (Ed.), Par. 281. * * *

"* * * In the case of a possibility of reverter the possessory estate vests immediately and automatically upon the happening of the event whereby the determinable or conditional fee is terminated;"

Testimony here fully sets out that the Bethel Baptist Church ceased to worship God on this tract of land in the year 1911 when the congregation moved to its then new church building on North Main Street and at that time the estate *ipso facto,* determined and vested in the heirs of Joseph Woodruff. "Because the grant of a fee simple determinable or conditional has left nothing in the grantor that can be subject of devise or inheritance, the whole estate will, upon the happening of the event of defeasance, pass, if the grantor be then dead, not to those who were his heirs at the time of his death, but to those who answer to the description of his heirs at the time of the termination of the estate granted." *Purvis v. McElveen,* 234 S. C. 94, 106 S. E. (2d) 913. The testimony fully establishes that since 1911, the church has held this property adverse to all persons, including the heirs of Joseph Woodruff as of that date, well over 50 years before the beginning of this action. The heirs of Joseph Woodruff and anyone claiming under them are now estopped and have waived any right that they had in the acquiescence by them (in the use of the) land for over 50 years. See *Bernard v. Bowen,* 214 N. C. 121, 198 S. E. 584; 39 A. L. R. (2d) 1156.

From the testimony taken by me, for the reasons above stated and from the law as held in the cases of *Furman University v. Glover,* 226 S. C. 1, 83 S. E. (2d) 559; *Furman University v. McLeod,* 238 S. C. 475, 120 S. E. (2d) 865, and *Presbyterian Church of James Island v. Pendarvis,* 227 S. C. 50, 86 S. E. (2d) 740, I find that the Plaintiff is the sole owner of the property described in the Complaint in fee simple, subject only to the lien of the mortgage to First Federal Savings and Loan Association of Spartanburg, S. C. The Defendants in this action include all parties who could have any interest in or lien upon said real estate adverse to the claims of the Plaintiff. None of the Defendants nor anyone else has any right to or claim upon any part of the property adverse to Plaintiff except lien of mortgage to First Federal and it should be so adjudged by Decree of this Court.

Wherefore, I recommend that the Court pass its Decree adjudging Plaintiff to be the sole owner in fee simple of the property described in the Complaint, subject to no restrictions, reverter, reversion or right of re-entry of forfeiture, with full power to sell, lease, mortgage, convey, develop or otherwise dispose of all or any portion thereof, subject only to lien of mortgage of First Federal Savings and Loan Association of Spartanburg, S. C.

That all parties defendant in this action be adjudged forever barred from having any claim upon or interest in any of said property except lien of mortgage to First Federal Savings and Loan Association of Spartanburg.

I recommend that Mr. Pete Martin be paid the sum of $150.00 for his services as guardian *ad Litem* for the Defendants under disability.