## 8429

### MARS v. GIBERT.

1. TRUSTS.—The cy-pres doctrine, sometimes invoked in England and other jurisdictions in the administrations of charities, has not been followed by the Courts of this State.

2. IBID.—WILLS.—The main purpose of the will of John de la Howe, to give industrial training to twelve boys and twelve girls, and the children in the neighborhood of the school, would be defeated by establishing scholarships for the boys in Clemson College and for the girls in Winthrop College, but as considerable flexibility is allowed in the details of the execution of trusts, the trustees may obtain the results intended by the scheme of the will by co-operating with the public school trustees in having agriculture and mechanics taught in said schools in the vicinity of the property.

Before MEMMINGER, J., Abbeville, November, 1912. Reversed.

Action by E. A. Mars *et al.* against Albert Gibert *et al.* Plaintiffs appeal. The will in question is:

"State of South Carolina, Abbeville County.

"In the name of God, Amen.

"I, John de la Howe, of the county of Abbeville, in the State of South Carolina, M. D., being of sound and disposing mind, memory and understanding, do make, ordain and publish this my last will and testament.

"*In primis,* it is my will and desire that my remains shall be buried as near as can be to the spot where those of the late Miss Rebecca Woodin are deposited, on the hill opposite to the dwelling house wherein we both resided together, and I still do reside, on my plantation or farm named Lethe, as the last mark and testimony of my friendship and sense which I ever have retained of her merit; and it is further my will, that as soon as it can conveniently be done after my decease, a substantial brick wall shall be built around our sepulchers, not less than ten feet square in the clear, eight feet above ground, and two bricks thick;

with a substantial door and lock, and that the whole of it, shall forever be kept up and in good order, and the area within clear of bushes and weeds; that the following inscription in large iron capitals shall forever be kept incased in the door, Rebecca Woodin obiet 4th Oct. ris 1788—Joes de la Howe *fundator Seminarie Agriculturalis,* with the date of my decease.

"I give and devise all my real and personal estate of whatsoever nature it may be, so in possession as in right, (excepting what is hereafter by this my last will otherwise disposed of) to the president and Agricultural Society of this State of South Carolina, now or lately holding their usual meetings in the city of Charleston, and to such of their members as the said society *pro tempore* shall name and appoint to take the execution and trust contained in this my last will and testament upon them, and to their successors in said appointment forever. That is to say, in trust for the following intent, uses, and purposes, and for no *other use,* intent, or purpose, whatsoever, viz: for causing and procuring, to be erected, established, organized, and forever kept up on that part of the plantation where I now reside or any other part between the springs and mouth of the branch which runs through the yard, and Little River, an agricultural or farm school, *in conformity as near as can be (Mutatis Mutandis) as occasional circumstances may render advisable,* and the wisdom of the society shall suggest, to a plan proposed in the Columbian magazine for the month of April, one thousand seven hundred and eighty-seven; with this difference—*that this farm school is principally by me intended* for by the yearly income of the estate by me devised and bequeathed by this my last will, forever both educating in conformity to the said plan, and also lodging, feeding and uniformly clothing twelf poor boys and twelf poor girls, whose parents, or who themselfs have resided in Abbeville county aforesaid, not less than six years, and actually continue to reside within the compas or

extent of said county; but that orphan children' (Cateris Parebus) shall have the preference. And it is my will that they shall manufacture such of their clothing themselfs, as can be made out of the produce of the farm, and that the trustees shall be pleased to procure out of the ready money which I shall leave at my decease, such implements for facilitating labour, as may not only answer that purpose *but contribute at the same time to the facilitating the labour of the neighbors and making them more industrious;* provided that not above one hundred pounds sterling be employ'd in the purchase of said implements. And I do wish and recommend, the use of beach leaves gathered before the frost, and dried in the shade for bedding, as the leaves of the beach tree, cured as mentioned, make a comfortable, and by far more healthy bedding than feathers, as they will remain good for four or five years, and may be easily renewed, and as being introduced amongst the poorer class of citizens (whose bedding is now a blanket) they may thereby enjoy one that is comfortable and healthy.

"And it is my will that such part of my personal estate as the trustees shall not think immediately necessary or particularly useful for carrying on the farm and farm school, shall be by them sold in such manner and such terms as they may think the most advantageous; but that in particular my surveying compass, chain, and instrument case, shall be reserved for the *use of the farm school,* as likewise such books as in their judgment may be useful to the master, and particularly, Shaw's chemistry, so that he thereby may be enabled to comply with the next following article, if unacquainted with the principles, viz: That it shall be the duty of the master, that besides having the boys instructed in reading, writing, arithmetic, principles of geography, and of geometry so far as to render them versed in practical surveying, and the girls in reading, writing and four common rules of arithmetic, he will and shall instruct both boys and girls, (so as occasion offers) in such chemical principles,

as the success of their different operations depend upon, as malting, brewing, distilling, baking, fixing different colours, making vinegar, soap, cheese, butter, etc., etc.

"*And it is my will that such children as reside conveniently in the neighborhood for attending the school, may be allowed to be instructed as the children of the farm school,* those of parents not able to pay the schooling, *gratis,* and those who can afford it, at such rate as they and the master can agree upon, but to such number only as the trustees shall judge that the master can conveniently instruct, provided that all children admitted into the said farm school shall be obliged to conform to such rules and regulations, as the trustees or master shall from time to time reasonably make for the government thereof.

"And it is further my will, that in the choice of a master for the said farm school, skill, industry, and morals shall be the only qualifications attended to, and that in the admittance of poor children, no manner of regard shall be paid to what religion or sect they or their parents possess; and that it shall be a particular charge to the master, to teach and instruct them only, in the general plain, and practical parts of religion and morality, without medling with speculative and controverted points, or with such as constitute the particular character of any sect.

"In case that it should appear to the society that the yearly income of the estate by this my last will given and devised, should not be sufficient to carry immediately my above disposition into full effect, (which however is not expected) I in that case request them to make such beginning as the yearly income may bear the expenses of, in such manner that the stock on the farm, as horses, mares in particular, horn cattle and sheep may be kept up for the use of the farm, but as I shall leave a considerable sum in ready money, I recommend that such suitable but simple buildings in the way of my present overseer's house may be immediately

erected to answer the plan to the whole extent, but that all the outward timber may be of chestnut.

"It is also my will that my tract of land, part of which I do now keep inclosed and reside on, made up of twenty-one original tracts, and by a late re-survey containing two thousand six hundred and thirty acres shall be forever so far indevisable as that five hundred acres shall be laid out for the farm, including what is under fence, and that one thousand acres shall forever remain in wood or forest, in order to supply the farm with convenient range and with fuel and timber, and in process of time contribute to the support of the institution, but that the surplus land over and above the five hundred, and one thousand acres before specified may be by the trustees to farm let in such tracts as they shall think to the best advantage, provided that no tract of land by this my last will devised shall ever be let on a more extensive lease than that of fourteen years, and that every such lease shall contain a condition that the lessee shall not cut or willfully suffer to be cut any timber or wood from the said thousand acres reserved for the use of the farm school, unless by and with the express permission of the trustees.

"And it is my will, that in case the Agricultural Society of South Carolina, should against my expectaton (the plan being relative to the institution of the society) should decline or neglect appointing trustees for taking upon themselves the execution of this my last will and testament or the trust contained in the same, or that the said society should at any time be dissolved or annihilated, that then and in each of these cases, the execution of this my last will or the trust contained in it, shall devolve upon such trustees as the honorable legislature of this State shall please to name and appoint; *and as the aim of this my last will and testament, is to raise useful citizens,* I do hereby humbly request the honorable legislature that in the above case they may be pleased to incorporate such trustees as they shall think

proper to appoint, under such clauses and regulations as in their great wisdom shall seem meet; and for the same reason of intending to raise useful citizens to the State many whereof would without such an institution be a nuisance, I begg the honorable legislature graciously pleased to keep the *institution under their fatherly protection.*

"It is further my will, that whenever the yearly income of the estate by me bequeathed and devised, shall be adequate to it, such children as shall have completed their education at the farm school provided they have not resided there a less time than five years, and behaved to the satisfaction of the trustees during their residence, shall receive such gratification in cattle from the trustees, as in their judgment they shall think expedient.

"I give and devise to the heirs of the Rev'd Mr. Samuel Frederick Lucius, in his life time, V. D. M. the immediately hereafter to be mentioned three continuous tracts of land, viz: One tract of one hundred and fifty acres, one do. of one hundred acres adjoining the first and one tract of fifty acres adjoining the two former, making together a valuable plantation of three hundred acres, more or less, situate on Savannah River and Swift Creek in Edgefield county, below the mouth of Little River, in compensation of such balance of a conditional bond, by me given to the said Mr. Lucius, as the heirs think unpaid (no matter whether any is due by me or not) as the executrix and heirs have hitherto been unwilling or unable to produce the said bond, tho' repeatedly by me required and sollicited to it in order to verify the different receipts of the said Mr. Sam'l Fred'k Lucius for large sums on the back of the said bond by which, and such other vouchers as are in my possession, I believe that the estate rather would be found in my debt; provided nevertheless that the said executrix (now Mrs. Susanna Gibson of the Congarees) and the said heirs, shall and do within one year immediately succeeding the date of my decease, manifest, declare, and make it known to the presi-

dent and Agricultural Society of South Carolina, that they do accept of the said three tracts of land, or plantation of three hundred acres, more or less, in full compensation of what ballance may possibly be due by me on the said conditional bond; but it is my will that in case the above mentioned heirs, shall not manifest, declare, and make known as aforesaid, that they accept of the said plantation on the conditions above specified, that then the said three tracts of land, shall make part of the map, and remain annex'd to the bulk of the estate by me given and devised, and that in that case, on the said heirs or executrix verifying any ballance to be due by me, my said executors or trustees shall please discharge the same. It is my will that immediately after my decease, my old negro man Bacchus shall be free and manimitted, as I have considered him to be many years ago, and as that notwithstanding, his voluntary services have been performed with equal honesty and fidelity, it is my will, that all my common wearing apparel by me given to him, and during the small remainder of his life, he be maintained out of the income of my estate, both in sickness and health, with every possible ease and comfort, as his meritorious services deserve every comfort in my power to procure him. I therefore particularly recommend this to my executors and trustees.

"To my worthy and much respected friends Dr. Edward Jenkins, V. D. M., and his lady, James Linah and his lady, and Capt. Edward Linah, son of the said James, and to his lady, and to each of them, I give one mourning ring of the value of one Guinea, which I wish them to accept as a testimony that I have only lost the grateful sense of their friendship with my breath; knowing that in their circumstances, anything valuable would be beneath their acceptance. To Miss Anne Cook my present housekeeper, I leave ten pounds sterling in compensation for her services.

"I do name, request, make and appoint the honorable president and South Carolina Agricultural Society, and

such of their members as they shall please *pro tempore* to name and appoint to take the execution and trust of this my last will and testament upon them, and their successors in said appointment forever, executors and trustees to this my last will and testament; and I do request Peter Gibert, Esq., of Mill Creek, in said county of Abbeville, to take the execution of it to himself until such of the members as the agricultural society shall please to name and appoint do take the same upon themselves—and I do by this revoke and annul all former testaments which I may have made at any time previous to this seventh September, in the year of our Lord one thousand seven hundred and ninety-six. Whatever ready money I shall leave at my decease, (in case it pleases God it should be shortly) is known to my above executor, Peter Gibert, Esq. John de la Howe, (L. S.).

"Sig'd, seal'd, declared and published by the said John de la Howe, the testator, as his last will and testament, in the presence of P. Gibert, L. Eymerie Mark, Anna Cook.

"I now do hereby declare and republish my above will and in order of having the said will and testament more properly executed, I do name and join and appoint Mr. William Hutton, of Abbeville county, planter, as a joint executor with Peter Gibert, Esq. John de la Howe." January 2d, 1797.

*Messrs. J. Moore Mars* and *Howard Moore,* for appellants, cite: *The doctrine of cy-pres has not been adopted by the Courts of this State:* 3 Rich. 509; Story Eq., sec. 1182; 9 Smith 278; 2 Strob Eq. 395.

*Messrs. Green & Hill,* contra.

February 4, 1913. The opinion of the Court was delivered by

MR. JUSTICE WOODS. This appeal is from an order of
the Circuit Court sustaining a demurrer to the answer and
granting the relief demanded in the complaint.

There is no dispute as to the facts which appear from the
pleadings. Dr. John de la Howe died in Abbeville county
some time before the year 1800, leaving a will dated 2 Jan-
uary, 1797, which was duly admitted to probate. He
devised nearly all of his property to trustees to be used in
founding and maintaining an agricultural and mechanical
school on his land in Abbeville county in which twelve poor
boys and twelve poor girls were to be supported and taught,
and in which the children living in the neighborhood who
chose to attend were also to be instructed.

The will contemplated that the trustees should be
appointed by the Agricultural Society of South Carolina,
and in case the society should decline to make the appoint-
ment, that then the trustees should be designated by the
legislature. On that point the provision was made: "And
as the aim of this my last will and testament is to raise use-
ful citizens, I do hereby humbly request the Honorable
Legislature that in the above case they may be pleased to
incorporate such trustees as they shall think proper to
appoint, under such clauses and regulations as in their great
wisdom shall seem meet; and for the same reason of intend-
ing to raise useful citizens to the State many whereof with-
out such an institution would be a nuisance, I beg the Hon-
orable Legislature graciously pleased to keep the institution
under their fatherly protection."

The agricultural society having failed to execute the
power of appointment the legislature of the State desig-
nated the trustees, and E. A. Mars, J. B. Hollaway, Albert
Gibert, John U. Wardlaw and W. B. Ulrich now consti-
tute the board holding under legislative authority. The
school has been conducted up to the present time on the
testator's land in accordance with the direction of the will.
In 1912 the trustees represented to the General Assembly

that the public schools were supplying the same school facilities as were furnished by the De la Howe school, and that for this reason it had come to pass that the benevolent purpose of the testator could not be carried out if they adhered strictly to the scheme of the will, and that the general purpose of making good citizens of twenty-four poor children could be better conserved by using the funds for the foundation of scholarships in Clemson College for the boys and in Winthrop College for the girls. Accepting this view the General Assembly passed a concurrent resolution authorizing the trustees to institute legal proceedings "for the purpose of determining whether or not the said trustees can be authorized by the General Assembly to establish and maintain from the revenue of said estate such number of scholarships for boys and girls in Clemson Agricultural College and Winthrop Normal Industrial College as the said trustees may deem proper and the revenue of the said estate justify." By the resolution the trustees were authorized to make the contemplated change and establish the scholarships, if the Court should decide that the trust fund could be used for that purpose. Thereafter the trustees, by resolution, determined to make the change, and this action was brought by E. A. Mars and J. B. Hollaway in their own right as citizens of Abbeville county, and as trustees under the will, to enjoin the board from carrying out its purpose, the contention of the plaintiffs being, that under the laws of this State the change proposed "will amount to the violation of the trusts imposed by the said will, and the result will be that the said estate will be escheated to the State of South Carolina, and that it will revert to the heirs of the testator to the great and irreparable damage of the plaintiffs and all other citizens of Abbeville county."

The position taken in support of the proposed change from the support of a local industrial school to the endowment of scholarships in State colleges is that when the

trustees of any charity fund find that it cannot be advantageously administered for the purpose set out in the instrument under which they act, they may apply the funds to some other charitable purpose different from the original purpose but cognate to it. This is known as the *cy-pres* doctrine recognized in England and many other common law jurisdictions. The Circuit Judge based his decree on this doctrine, holding that it should be applied and the proposed change sanctioned. In this State, however, the doctrine has been repudiated in more than one case. In *Attorney General* v. *Jolly*, 2 Strob. Eq. 395, the Court says on the subject of *cy-pres:* "That is a doctrine which this Court will be very reluctant to adopt without a strong necessity, and very mature reflection. It has never, to our knowledge, been adopted or recognized in our Courts, and we are persuaded that it ought not to be adopted." The holding is to the same effect in *Pringle* v. *Dorsey,* 3 Rich. 509.

The only particular in which the trust of the will and the trust proposed by the trustees and the General Assembly coincide is that both contemplate the development into good citizens of twelve poor boys and an equal number of poor girls of Abbeville county by industrial training. In all other particulars the trust proposed will be essentially different from the trust of the will. It is obvious from the will, especially the portions we have italicized, that the testator had three main purposes in view. First, the establishment and maintenance of an agricultural and mechanical school as an institution in Abbeville county stimulating and improving the industrial life of the entire community; second, the training free of charge of twenty-four boys and girls, not as college men and women, but in the beginning of school life; and third, the like training of the children of the neighborhood not supported by the fund. All of these objects would be defeated by the change. There would be no local institution, and only boys and girls

30—93

fit for college would receive the benefit. It follows that under the laws of this State the Court is obliged to refuse to sanction the proposed change of the trust fund.

It does not result, however, that the details of the plan laid down in the will must be followed to the letter. The main purpose being kept in view, considerable flexibility will always be allowed in the details of the execution of a trust, so as to adapt it to the changed conditions. *Mfg. Co.* v. *City of Zanesville,* 20 Ohio 483; *Hesketh* v. *Murphy,* 36 N. J. Eq. 309; *Hadley* v. *Forsee,* 14 L. R. A. 144 (Note); Perry on Trusts, par. 687; 6 Cyc. 903; 6 Cyc. 959.

As we have seen, it is perfectly obvious that the main purpose of this trust is the maintenance of a school in the neighborhood where the testator lived for the benefit primarily of twenty-four poor boys and girls without charge, and generally of the boys and girls of the entire community, with incidental benefits to all the people of the community.

When the trust was created the State made little provision for the teaching of poor boys and girls, while now nearly all the schools are free, and there is little difference between the school facilities of the rich and the poor. But the main branches, namely, agriculture and mechanic arts, which the testator proposed to have taught to the children of the neighborhood, are still little taught in the public schools. It is now generally recognized that the teaching of these branches is not only practicable and advisable, but absolutely essential to the progress of every community. It may not be practicable to conduct such a school at the precise place in the community designated by the will—that is not essential to the main purpose of the trust. It may not be possible to make such a school successful, except when conducted in conjunction with the public school of the neighborhood—but that is no objection. It is true that the trustees of the De la Howe school could not surrender their trust to the control of the public school trustees, but they could elect the superintendent and teachers of the pub-

lic school, head master and teachers of the De la Howe Agricultural and Mechanical School, and the two institutions could be thus conducted in conjunction to the benefit of the community.

This would not defeat, but accomplish, the purpose of the benevolent testator, and it would carry out the scheme laid down by him for the accomplishment of his purpose with only such variation in detail as changed conditions have made necessary. Any plan of administration like this keeping in view and carrying out the main purpose of the trust would be within the discretion of the trustees.

We are unable to conclude that the plan of the testator has failed or that the proposed change can be sanctioned under our law.

Reversed.