0804

COLIN McK. GRANT HOME, an Eleemosynary Corporation and W. A. Wier, Jr., as President and representing all of the Members of the Board of Trustees of the Colin McK. Grant Home, Petitioners-Respondents, v. T. Travis MEDLOCK, as Attorney General of the State of South Carolina, Mrs. Ruby Donald, a resident of the Grant Home and representing the other residents, Chet Lane Rose, Allene R. Goodman, Claudia Ramos, Robert Goodman, Gail Henderson, Colin G. Edwards, Lucy Edwards Hochstein, Walter H. Edwards, Walter H. Edwards, Jr., Joan E. Deitschweiler, and Carol E. Thomas, individually and representing the class of any unborn descendents of the family of Mrs. Elizabeth G. Rose unto the fourth generation, Respondents, of whom T. Travis Medlock, as Attorney General of the State of South Carolina, Mrs. Ruby Donald, a resident of the Grant Home and representing the other residents, Allene R. Goodman, Claudia Ramos, Robert Goodman, Gail Henderson, are also Respondents, Appeal of Chet Lane ROSE, Lucy Edwards Hochstein, Walter H. Edwards, Colin W. Edwards, Walter H. Edwards, Jr., Joan Edwards Dietschweiler, and Carol E. Thomas, individually and representing the class of any unborn descendents of the family of Mrs. Elizabeth G. Rose unto the fourth generation.

(349 S. E. (2d) 655)

Court of Appeals

*Richard S. Rosen* and *Susan C. Rosen* of *Rosen, Oberman and Rosen,* Charleston, *for appellants.*

*T. Travis Medlock, Atty. Gen.,* and *Charles H. Richardson, Asst. Atty. Gen.,* Columbia, *Norman W. Stevenson* and *N. L. Barnwell* of *Barnwell and Stevenson,* Charleston, and *Theodore B. Guerard* and *William Cleveland* of *McKay and Guerard,* Charleston, *for respondents.*

Heard May 19, 1986.

Decided Oct. 6, 1986.

BELL, Judge:

Colin McK. Grant Home, an eleemosynary corporation, and W. A. Wier, Jr., as President and representative of the Board of Trustees of the Colin McK. Grant Home, commenced this action petitioning for approval to sell the Home's real property and use the proceeds to establish a housing subsidy fund for the trust beneficiaries. The Home operates under a trust established by Colin McK. Grant. It provides housing for qualified residents at the Home. The appellants, heirs of Colin McK. Grant, allege the trust has failed and should be dissolved, with the proceeds distributed to Grant's heirs at law. The Attorney General of South Carolina was made a party to this action in accordance with Section 1-7-130, Code of Laws of South Carolina, 1976. The master and the circuit court found the principle of equitable deviation allowed the property to be sold and a housing fund established from the proceeds. The heirs appeal. We affirm.

The facts of the case are largely undisputed. Grant and his wife, Jane Wilson Grant, chartered an eleemosynary corporation on April 29, 1920. The purpose of the corporation, as stated in its charter, was "[t]o provide a home for Elderly white Presbyterians of Charleston, South Carolina." Grant died on September 21, 1921. In his will he left the residue of his estate to the Colin McK. Grant Home, to be built on the southwest corner of Huger and Meeting Streets. Mr. Grant directed the Home to be:

> for white persons in reduced circumstances, both men and women, who by faith and profession are Presbyterians and who may be admitted to said Home under such rules as may be established by the Trustees of said

Home. Provided that . . . such persons shall be over forty years of age and shall have been residents of the City of Charleston for at least five years.

A codicil to Mr. Grant's will directed that all residents be Presbyterian and that no trustee, officer, or employee of the Home be a Roman Catholic.

Mrs. Grant died September 5, 1923. She bequeathed all of her residual estate to the Home established in memory of her husband, in accordance with the rules and regulations for its management in force at the time of her death. The Home was under construction at the time of Mrs. Grant's death. It consists of six brick, two-story houses, with the capacity to house 24 residents. The Home commenced operation in 1924. For years it was filled to capacity and had a waiting list.

At the time this suit was commenced, the deterioration of the surrounding neighborhood had caused severe problems. The area had a high crime rate, and there were no nearby shopping facilities. Occupancy was down to six persons. At the time of the hearing, the number of residents had declined to three.

The trustees desire to sell the present Home and use the proceeds to establish a fund to provide housing to persons meeting the trust's criteria. They entered a contract to sell the property for $132,500, pending the court's approval.

Mr. Grant provided in the codicil to his will that each descendant of his sister Mrs. Elizabeth G. Rose, to the fourth generation, was entitled to occupy half of one of the foundation's houses. Eleven of Mr. Grant's seventeen heirs refused to renounce their rights under his will. They maintained in their answer and counterclaim that because of changed circumstances, the operation of the Home as contemplated by the Grants cannot be accomplished and the trust should be dissolved with proceeds distributed to the heirs. They later amended their answer to seek dissolution of the trust on the ground that the Home practiced racial discrimination in violation of the public policy and laws of this State and of the United States.

The trustees of the Home passed a resolution by which they amended their petition and asked the court to delete the racial restrictions from the trust's requirements.

The master in equity recommended that the court decree: (a) the proposed sale of the property did not violate the trust provisions and should be confirmed; (b) the proposed plan to use the funds to subsidize housing for Presbyterians of all races who are over forty and in reduced circumstances and have resided in Charleston for at least five years will carry out the essential purpose of the trust; and (c) the heirs at law of Mrs. Elizabeth Grant Rose to the fourth generation who have not renounced their rights under the terms of Mr. Grant's will may also be beneficiaries of the fund created, if they are in reduced circumstances and residents of the City of Charleston. The circuit court confirmed the master's report.

The heirs appeal the trial court's order and argue the trust should be dissolved. They contend the trial judge erred in (1) failing to find the testators intended to establish a home at a specific location as a perpetual monument to Mr. Grant and exclusively for the benefit of white persons; and (2) improperly applying the doctrine of equitable deviation to uphold the trust when it is no longer possible to carry out the trust's purpose.

I.

Charitable trusts are entitled to peculiar favor; the courts will construe them to give them effect, if possible, and to carry out the general intention of the donor. *Porcher v. Cappelmann*, 187 S. C. 491, 198 S. E. 8 (1938). *Cf.* G. Bogert, *The Law of Trusts and Trustees* § 361, at 2 (rev. (2d) ed. 1977). Because of this special deference, courts have employed two doctrines to permit the survival of a charitable trust when it is impossible to comply with the literal terms of the trust. The doctrine of cy pres, which permits a court to apply the funds of a charitable trust to a general charitable purpose, has been consistently rejected by the courts of this State. *South Carolina National Bank v. Bonds*, 260 S. C. 327, 195 S. E. (2d) 835 (1973); *Furman University v. McLeod*, 238 S. C. 475, 120 S. E. (2d) 865 (1961); *Mars v. Gibert*, 93 S. C. 454, 77 S. E. 131 (1912); *Pringle v. Dorsey*, 3 S. C. 502 (1872). This State has, however, long recognized the doctrine of equitable deviation, which permits the strict terms of a trust to be altered when changed circumstances so require to effectuate the trust's purpose.

*South Carolina National Bank v. Bonds, supra. See also Furman University v. McLeod, supra; Mars v. Gibert, supra.*

Although a court has considerable discretion to adapt a trust to changed circumstances, this flexibility is not unlimited. The distribution of trust property must always be in accord with the settlor's intent. *South Carolina National Bank v. Bonds, supra.* The trial judge, concurring with the master, found Mr. and Mrs. Grant intended "to provide housing needs to elderly Presbyterians in Charleston." The heirs challenge this finding and contend the testators' intent was, more specifically, to establish a home at the corner of Huger and Meeting Streets in Charleston to serve as a monument to Mr. Grant and to benefit only members of the caucasian race.

When the circuit court concurs in the master's findings of fact, this Court will not disturb those findings unless they are without any evidentiary support or against the preponderance of the evidence. *Ex parte Guaranty Bank and Trust Co.*, 255 S. C. 106, 177 S. E. (2d) 358 (1970). The record in this case amply supports the findings of the master and the circuit court judge.

The heirs stress the portion of both Mr. and Mrs. Grant's wills that provided the Home be located on Huger and Meeting Streets for the housing of white Presbyterians. They also emphasize that at the time of Mrs. Grant's death, the Home's by-laws provided as follows:

> The Colin McK. Grant Home shall always be located and conducted on the property at the corner of Huger and Meeting Streets, in the City of Charleston, as Memorial to the late Colin McK. Grant of Charleston, S. C., and in strict accordance with his Will.

As the trial judge observed, Mr. Grant was a public spirited and civic minded citizen, who wished to provide housing for elderly Presbyterians of Charleston. To this end, he and his wife arranged for the purchase of a specific piece of property to be used as a home. There is no reason to doubt that if that particular real estate should become unsuitable for this purpose, he or his wife would have wished the funds to be used to provide some other means of housing for the intended beneficiaries of the trust. Thus, the use of the

specific Home they established was merely one method, convenient at the time of the trust's establishment, for carrying out their intent.

The heirs contend, however, that the language of Mrs. Grant's will and of the bylaws shows a clear intent that the Home built at the specified location be a monument to perpetuate Mr. Grant's memory. Although Mrs. Grant certainly wished to preserve her husband's memory, her intent does not require the use of the specific Home they established, or of any physical structures at all. A charitable trust that distributes money to house the needy can serve equally well as a memorial to Mr. Grant's philanthropy.

Finally, the heirs argue that the settlors intended the fund to benefit only members of the white race. It is true that Mr. Grant's will, Mrs. Grant's will, and the trust's by-laws all referred to the beneficiaries as white Presbyterians. Mr. Grant's codicil, however, contained no racial restriction, although it stressed the requirement that all beneficiaries be Presbyterian, and specifically excluded Roman Catholics from the class of beneficiaries. This omission of any racial restriction, despite the emphatic religious limitation, raises an inference that the race of the beneficiaries was not of primary importance to Mr. Grant. In addition, the by-laws themselves permit their provisions to be amended by a majority vote of the trustees.

The heirs also argue that the trial court erred in considering extrinsic evidence to determine the intent of the testators, but fail to identify that evidence. Even if the court did examine extrinsic evidence, this was not error. Where there is a latent ambiguity in a will, extrinsic evidence is admissible to determine the testator's intent. *South Carolina National Bank v. Bonds, supra.* A latent ambiguity exists when, because of changed circumstances, the application of language in a will to a current factual situation results in uncertainties. *Id.*

For these reasons, we agree with the circuit court and master that the primary intent of the settlors was to provide housing for elderly Charlestonian Presbyterians of reduced circumstances.

## II.

The heirs argue that because the trust can no longer be

administered to effectuate its purposes, the trust must fail. They contend the trial court erred in applying the doctrine of equitable deviation to preserve the trust. We must now determine in light of the testators' intent whether the court properly struck from the trust the requirements that the housing be provided at a specific location and only for members of the white race.

The trial judge and the master found the deterioration of the Home's neighborhood and the consequent decrease in occupancy were changed circumstances that justified the sale of the Home, despite the settlor's specification of its location. They concluded sale of the Home and establishment of a housing subsidy fund will better enable the trustees to effectuate the purpose for which the trust was established.

Equitable deviation permits deviation from a term of the trust if, owing to circumstances not known to the settlor and not anticipated by him, compliance would defeat or substantially impair the accomplishment of the purposes of the trust. Under these circumstances a court may direct or permit a trustee to accomplish acts that are unauthorized or even forbidden by the terms of the trust. *South Carolina National Bank v. Bonds, supra,* (citing Restatement (Second) of Trusts § 381(d)). In this case, the record shows that the purposes of the trust can no longer be accomplished by operation of the Home at Meeting and Huger Streets. Accordingly, the court committed no error in authorizing sale of the property and the creation of a trust fund.

The court below also found the racial restriction was not essential to the trust's primary purpose and should be eliminated because of changed circumstances. The heirs agree the restriction must be stricken, but contend that for that reason the trust must fail. The heirs rely heavily on *City of Columbia v. Monteith,* 139 S. C. 262, 137 S. E. 727 (1926), and *Evans v. Abney,* 224 Ga. 826, 165 S. E. (2d) 160 (1968). These authorities, however, are inapposite to the present case. Although *Monteith* involved a trust to establish a school for the children of indigent white persons, the Court never addressed the racial restriction. In *Evans,* the Georgia Supreme Court refused to strike a racial

restriction in a trust, but based its decision on the trial court's finding, amply supported by the evidence, that the settlor clearly intended to limit the beneficiaries to members of the white race.

In this case the trial judge and the master agreed circumstances had changed sufficiently since the trust's execution to warrant elimination of the racial restriction. We concur in that finding. In the past sixty years racial relations have changed significantly, and discrimination in housing has become illegal. Segregation is no longer a way of life in Charleston. In addition, the Presbyterian Church itself has undergone significant change. When the trust was executed, the Presbyterian churches were segregated, but that is no longer the case. In 1983 the Presbyterian Church of the United States and the Presbyterian Church in the United States merged and as a result, the churches in Charleston are now integrated. The expansion of a trust's class of beneficiaries is neither novel nor beyond the scope of equitable deviation. *Cf. South Carolina National Bank v. Bonds, supra.* While no South Carolina case has specifically addressed the issue, courts in other jurisdictions have held equitable deviation is a sufficient basis for eliminating racial restrictions from the terms of a trust. *See Wachovia Bank and Trust Co., N.A. v. Buchanan,* 346 F. Supp. 665 (D.D.C. 1972), *aff'd,* 487 F. (2d) 1214 (D.C.Cir.1973); *Bank of Delaware v. Buckson,* 255 A. (2d) 710 (Del. Ch. 1969); *Wooten v. Fitz-Gerald,* 440 S. W. (2d) 719 (Tex. Civ. App. 1969); *Coffee v. William Marsh Rice University,* 408 S. W. (2d) 269 (Tex. Civ. App. 1966).

Because of the changed circumstances since the establishment of the trust, we agree with the trial court and the master that the trustees should be permitted to eliminate the racial restriction from the trust's requirements.

For the preceding reasons, the judgment of the circuit court is

Affirmed.

SHAW and CURETON, JJ., concur.