**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
**In The Court of Appeals**

Jacquelin S. Bennett and Kathleen S. Turner as Personal Representatives of the Estate of Jacquelin K. Stevenson, Appellants,

v.

Estate of James Kelly King and Genevieve S. Felder, Respondents.

Appellate Case No. 2017-001196

———————

Appeal From Charleston County
Thomas A. Russo, Circuit Court Judge

———————

Unpublished Opinion No. 2019-UP-412
Submitted June 3, 2019 – Filed December 31, 2019

———————

**AFFIRMED**

———————

Andrew Joseph McCumber, Daniel Scott Slotchiver, and Stephen Michael Slotchiver, of Slotchiver & Slotchiver, LLP, of Mount Pleasant, for Appellants.

George R. McElveen, III, of McElveen & McElveen, of Columbia, for Respondents.

———————

**PER CURIAM:** In this probate action, Jacquelin S. Bennett and Kathleen S. Turner, as co-personal representatives (the Personal Representatives) of the Estate of Jacquelin K. Stevenson (Testatrix), appeal the circuit court's order affirming the probate court's division of Testatrix's residuary estate (the Residuary Estate). On appeal, the Personal Representatives argue the circuit court erred in affirming the probate court's finding that (1) Testatrix intended all real property passing through the Residuary Estate to pass to each devisee in equal ownership interest shares and (2) Testatrix's will (the Will) did not provide the Personal Representatives with broad discretionary authority to distribute the Residuary Estate. We affirm.

1. We find the circuit court properly affirmed the probate court's allocation of equal ownership interests in each piece of the disputed real properties contained within the Residuary Estate (the Disputed Properties) to the Personal Representatives and Genevieve S. Felder (Felder).[1] *See NationsBank of S.C. v. Greenwood*, 321 S.C. 386, 392, 468 S.E.2d 658, 662 (Ct. App. 1996) (finding a case involving the construction of a will is an action at law); *Blackmon v. Weaver*, 366 S.C. 245, 249, 621 S.E.2d 42, 44 (Ct. App. 2005) ("On appeal from an action at law that was tried without a jury, the appellate court can correct errors of law, but the findings of fact will not be disturbed unless found to be without evidence which reasonably supports the judge's findings."). There is evidence in the record to support the circuit court's finding that a plain reading of the Will and the duties imposed upon a fiduciary require the Disputed Properties to be divided into equal ownership interests. *See Holcombe-Burdette v. Bank of Am.*, 371 S.C. 648, 656, 640 S.E.2d 480, 484 (Ct. App. 2006) ("In determining the intent of the [testatrix], a court must always look first to the language of the will itself."); *Epworth Children's Home v. Beasley*, 365 S.C. 157, 165, 616 S.E.2d 710, 714 (2005) ("The cardinal rule of will construction is to determine and give effect to the [testatrix]'s intent from a reading of the will as a whole."); *King v. S.C. Tax Comm'n*, 253 S.C. 646, 649, 173 S.E.2d 92, 93 (1970) ("[Courts] cannot consider the will piecemeal; but must attribute due weight to all of its language, giving effect to every part, if under a reasonable interpretation, all of the provisions can be harmonized with each other and with the will as a whole."); *Epworth Children's Home*, 365 S.C. at 166, 616 S.E.2d at 715 ("An interpretation that fits into the whole scheme or plan of the will is most likely to be the correct interpretation of the intent of the

---

[1] The parties entered into a private agreement (the Private Agreement), which provided if the Personal Representatives and Felder were unable to reach an agreement regarding the allocation of the Residuary Estate, the probate court would determine its allocation. By order dated March 3, 2015, the probate court approved the Private Agreement.

[testatrix]."); *id*. at 165, 616 S.E.2d at 714–15 ("In construing the language of a will, the appellate court must give words their ordinary, plain meaning unless it is clear the [testatrix] intended a different sense, or unless such a meaning would lead to an inconsistency with the [testatrix]'s declared intention.").

A plain reading of the Will provides Testatrix intended the Residuary Estate to be distributed in "equal shares."  Although the Will did not clearly provide for whether the equal shares should consist of equal ownership interests or shares of equal monetary value, South Carolina law requires a personal representative to distribute the estate for the best interests of the estate and the successors to the estate, not for his or her own personal interests.  *See* S.C. Code Ann. § 62-3-703(a) (Supp. 2019) (providing a personal representative is a fiduciary with a duty to distribute the estate of a decedent in accordance with the terms of the decedent's will and the law in a manner that is consistent with the best interests of the estate and "for the best interests of successors to the estate"); *Moore v. Moore*, 360 S.C. 241, 250, 599 S.E.2d 467, 472 (Ct. App. 2004) ("A fiduciary relationship exists when one imposes a special confidence in another, so that the latter, in equity and good conscience, is bound to act in good faith with due regard to the interests of the one imposing the confidence."); *Island Car Wash, Inc. v. Norris*, 292 S.C. 595, 599, 358 S.E.2d 150, 152 (Ct. App. 1987) (finding anyone acting in a fiduciary relationship shall not use the relationship to benefit his own personal interests); *id*. (indicating courts in the United States scrutinize fiduciary transactions between parties in a confidential relationship when "the dominant party secures any profit or advantage at the expense of the person under his influence").  Upon Testatrix's death, the Disputed Properties passed to the devisees of the Residuary Estate.  Therefore, the Personal Representatives could not divest Felder of her title in the Disputed Properties.  *See* S.C. Code Ann. § 62-3-101 (Supp. 2019) ("Upon the death of a person, his real property devolves to the persons to whom it is devised by his last will or to those indicated as substitutes for them in cases involving lapse, renunciation, or other circumstances affecting the devolution of testate estates . . . .").  Moreover, there is evidence in the record that the Personal Representatives' proposed allocation of the Residuary Estate into shares of equal monetary value would be inequitable because there is no reasonable purpose for their proposal.  The Lake Summit property—the property the Personal Representatives sought to divide between themselves, excluding Felder—was the most desirable piece of property in the Residuary Estate.  Lake Summit was used as a vacation home and rental, had sentimental value, and generated income, while the other two properties in the Residuary Estate were unimproved and had significant carrying costs.  Therefore, we find the circuit court did not err in affirming the probate court's allocation of the Residuary Estate.

2. We find the circuit court properly affirmed the probate court's finding that the Personal Representatives lacked the authority to allocate the Residuary Estate. *See NationsBank of S.C.*, 321 S.C. at 392, 468 S.E.2d at 662 (finding a case involving the construction of a will is an action at law); *Blackmon*, 366 S.C. at 249, 621 S.E.2d 44 ("On appeal from an action at law that was tried without a jury, the appellate court can correct errors of law, but the findings of fact will not be disturbed unless found to be without evidence which reasonably supports the judge's findings."). The Will provided the Personal Representatives had the powers granted by law, and it indicated it was Testatrix's intention to give broad discretion to the Personal Representatives. Article 10.1 of the Will provided the Personal Representatives had the power to determine what property was covered by general descriptions in the Will. A plain reading of the Will supports the probate court's determination that Article 10.1 solely allowed the Personal Representatives to determine what property was covered by a general devise, not the Residuary Estate, and there is no evidence in the record that Testatrix intended otherwise. *See Epworth Children's Home*, 365 S.C. at 165, 616 S.E.2d at 714–15 ("In construing the language of a will, the appellate court must give words their ordinary, plain meaning unless it is clear the [testatrix] intended a different sense, or unless such a meaning would lead to an inconsistency with the [testatrix]'s declared intention."). Article 10.6 of the Will provided the Personal Representatives had the power to make distributions "in cash or in *specific* property, real or personal, or an undivided interest, or partly in cash and partly in such property . . . without regard to the income tax basis of *specific* property . . . and without making pro-rata distributions of *specific* assets." (emphasis added). A plain reading of the Will supports the probate court's contention that Article 10.6 referred to the Will's grant of specific property, not the Residuary Estate. Furthermore, as previously indicated, upon Testatrix's death, the Disputed Properties passed to the devisees of the Residuary Estate and there is evidence to support the probate court's finding that the Personal Representatives' proposed allocation of the Residuary Estate would violate the fiduciary duties of a personal representative. Therefore, the Personal Representatives could not divest Felder of her title in the Disputed Properties. *See* § 62-3-101 ("Upon the death of a person, his real property devolves to the persons to whom it is devised by his last will or to those indicated as substitutes for them in cases involving lapse, renunciation, or other circumstances affecting the devolution of testate estates . . . ."); § 62-3-703(a) (providing a personal representative is a fiduciary with a duty to distribute the estate of a decedent in accordance with the terms of the decedent's will and the law in a manner that is consistent with the best interests of the estate and "for the best interests of successors to the estate"); *Island Car Wash*, 292 S.C. at 599, 358

S.E.2d at 152 (finding anyone acting in a fiduciary relationship shall not use the relationship to benefit his own personal interests); *id*. (indicating fiduciary transactions between parties in a confidential relationship are scrutinized when "the dominant party secures any profit or advantage at the expense of the person under his influence").

Moreover, we find the Private Agreement divested the Personal Representatives of any discretion the Will may have granted. *See* Rule 220(c), SCACR ("The appellate court may affirm any ruling, order, decision or judgment upon any ground(s) appearing in the Record on Appeal."); *I'On, L.L.C. v. Town of Mt. Pleasant*, 338 S.C. 406, 420, 526 S.E.2d 716, 723 (2000) ("The appellate court may . . . rely on . . . any other reason appearing in the record to affirm the lower court's judgment."); S.C. Code Ann. § 62-3-912 (Supp. 2019) ("[C]ompetent successors may agree among themselves to alter the interests, shares, or amounts to which they are entitled under the will of the decedent . . . in any way that they provide in a written contract executed by all who are affected by its provisions. The personal representative shall abide by the terms of the agreement . . . ."); S.C. Code Ann. § 62-3-1101 (Supp. 2019) ("A compromise of a controversy as to . . . the construction, validity, or effect of a probated will, the rights or interests in the estate of the decedent, of a successor, or the administration of the estate, if approved by the court after hearing, is binding on all the parties . . . ."). The Private Agreement was signed by the Personal Representatives and Felder, and it was approved by an order of the probate court following a hearing. The Private Agreement specifically provided that if the Personal Representatives and Felder could not come to an agreement regarding the allocation of the Residuary Estate, the probate court would determine the allocation. In failing to reach an agreement and in requesting a hearing for the probate court to allocate the Residuary Estate, the Personal Representatives gave the probate court the power to allocate the Residuary Estate and were divested of their right to utilize any discretion granted by the Will.[2] Therefore, we find the circuit court did not err in affirming the probate court's refusal to allow the Personal Representatives to use their discretion in the allocation of the Residuary Estate.

**AFFIRMED.**[3]

**WILLIAMS, GEATHERS, and HILL, JJ., concur.**

---

[2] Neither the validity nor the substance of the Private Agreement was appealed.
[3] We decide this case without oral argument pursuant to Rule 215, SCACR.